UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN MICHAEL CRIM, | ) | 1:09-cv-02041-AWI-GSA-PC |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS, |
| | ) | RECOMMENDING THAT THIS ACTION |
| vs. | ) | PROCEED ONLY WITH PLAINTIFF'S CLAIM |
| | ) | FOR RETALIATION AGAINST DEFENDANT |
| MANAGEMENT AND | ) | McBRIDE, AND THAT ALL OTHER CLAIMS |
| TRAINING CORP., et al., | ) | AND DEFENDANTS BE DISMISSED FROM |
| | ) | THIS ACTION |
| Defendants. | ) | |
| | ) | OBJECTIONS, IF ANY, DUE IN THIRTY |
| | ) | DAYS |
| _____ | ) | |

## I.     BACKGROUND

John Michael Crim ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to Bivens vs. Six Unknown Agents, 403 U.S. 388 (1971). Plaintiff filed the Complaint commencing this action on November 20, 2009. (Doc. 1.) On September 22, 2010, Plaintiff filed the First Amended Complaint. (Doc. 28.) On January 26, 2011, the Court dismissed the First Amended Complaint under Local Rule 220, with leave to amend. (Doc. 34.) On February 3, 2011, Plaintiff filed the Second Amended Complaint. (Doc. 35.) The Court screened the Second Amended Complaint pursuant to 28 U.S.C. § 1915A and issued an order on May 25, 2012, requiring Plaintiff to either file a Third Amended Complaint or notify the Court of his willingness to proceed with the claims found cognizable by the Court. (Doc. 59.) The Third Amended Complaint was filed on July 5, 2012. (Doc. 73.)

Plaintiff's Third Amended Complaint is now before the Court for screening.

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF THIRD AMENDED COMPLAINT

The events in the Third Amended Complaint allegedly occurred at the Taft Correctional Institution (TCI) in Taft, California, where Plaintiff is presently incarcerated. Plaintiff names as defendants Management & Training Corp., Neil H. Adler (Warden), Tiarra Stewart, Curtis

///

Logan, Mann (Unit Disciplinary Committee member), McBride (Special Investigative Supervisor) and Does 1-50. Plaintiff's factual allegations follow.

On or about July 30, 2009, Plaintiff, a Caucasion inmate, was serving food at his work assignment where he had worked for ten months. At one point, defendant Stewart, an African-American staff member on duty, put her hands on her hips and yelled at Plaintiff, "How long you been line-backer?" Plaintiff responded without thinking, "Long enough to know how to do the job." Then Stewart said, "That's enough, take off your gloves and get off my line." Plaintiff, intimidated and embarrassed, was escorted to the Special Housing Unit (SHU) for discipline, and an incident report was filed against him. Plaintiff was detained in the SHU for seven days.

On or about August 3, 2009, Plaintiff was brought before defendant Mann for a UDC hearing.[1] Plaintiff explained he was innocent of the charge of insolence to a staff member. Plaintiff had named three witnesses and one staff member representative in support of his claim of innocence. Plaintiff was given a copy of the Incident Report in which defendant Stewart alleged that Plaintiff said, "Don't tell me how to do my job." Plaintiff explained to defendant Mann that this is not what he said. Mann recommended loss of good time credit and disciplinary segregation, but the Disciplinary Housing Officer (DHO) ultimately determined this type of sanction was unwarranted in Plaintiff's case.

Plaintiff submitted a written complaint to Special Investigative Supervisors McBride and Sy, against defendant Stewart for discrimination. On or about August 5, 2009, Plaintiff was brought before McBride and Sy. McBride interviewed Plaintiff and informed him that no disciplinary measures would be taken against defendant Stewart, encouraging Plaintiff to drop the complaint or he would be detained another thirty days in the SHU pending the next hearing. McBride also stated that if Plaintiff continued with the complaint, he would be transferred to another prison. McBride told Plaintiff that if he dropped the complaint, the DHO hearing

---

[1]Unit Disciplinary Committee hearing.

would be conducted the next day and Plaintiff would be released from the SHU.  Under duress, Plaintiff decided to discontinue his complaint.

On or about August 6, 2009, Plaintiff was called into the DHO's office and found guilty of insolence.  Plaintiff was released from the SHU and taken back to the Camp facility.  DHO Logan imposed sanctions on Plaintiff: loss of job for six months and commissary restriction for three months.  UDC member Mann imposed additional sanctions without a hearing: loss of pay grade, loss of vacation, and placement into lower housing.

On or about August 8, 2009, Plaintiff observed defendant Stewart, who is African-American, outside of the dining hall, reprimanding an African-American inmate, stating "If you do that one more time, I will throw you in the hole."  This was one of many occasions when Plaintiff observed Stewart treating African-American inmates with deference, or greeting them as if it was a high school reunion.  Stewart would never look directly at Plaintiff or call him by name, referring to Plaintiff as simply "you" or "he," or simply issuing a grunt.

Plaintiff participated in the Inmate Financial Responsibility Program ("IFRP") at TCI, through which he made payments to meet his financial obligations.  On or about September 18, 2009, Plaintiff was called into defendant Mann's office.  Mann informed Plaintiff that he failed to meet his IFRP requirement by not having enough funds in his inmate account.  Plaintiff explained his circumstances, and Plaintiff was given more sanctions:  restriction of commissary purchases to $25.00 per month, lowest pay grade of $5.25 per month, and extended lower housing until December 1, 2009, at which time Plaintiff's ability to pay would be reevaluated.  Plaintiff told Mann that he will have earned only $15.75 by that date and would not be able to make the payment.

During the time that Plaintiff was in the SHU, Mann was heard by other inmates to say, "I'm glad to have him out of my hair."  This was reported to Plaintiff by more than one inmate.

On or about August 8, 2009, Plaintiff received a new job assignment, which was known as a "punishment job," and was paid at the lowest pay grade of $5.25 per month.  He was paid for 4 hours per day, 5 days per week.  Because of the new job, Plaintiff was required to attend his evening meal in the dining hall around 1630 hours.

On or about August 16, 2009, Plaintiff was instructed by the kitchen clerk to come and sign his last time sheet. He did as instructed and was confronted by defendant Stewart, in a haughty posture, who said, "What is he doing here?" The clerk simply told Stewart that Plaintiff was there to sign his time sheet. On or about August 21, 2009, while in line at the dining hall, Plaintiff presented his food tray to the line servers. Defendant Stewart only placed a few strands of spaghetti on Plaintiff's tray. Plaintiff remained there until defendant Stewart decided to place the remaining portion on his tray. On or about August 22, 2009, Plaintiff walked into the dining hall as usual and heard defendant Stewart say, "I'm going to put somebody in the hole." Stewart asked Plaintiff, "Where do you work?" and Plaintiff responded, "Main." At yet another time when Plaintiff was in the food line, someone jokingly made a comment that "there is a job opening," after which defendant Stewart said, "He ain't workin (*sic*) here."

On or about October 5, 2009, defendant Stewart was relocated to a job at the Main prison. On or about October 30, 2009, Plaintiff was working at his new job at Main Visitation, and defendant Stewart continued her pattern of intimidation at his new job. Stewart had no reason to be there.

Plaintiff requests monetary damages and injunctive relief.

IV.  **PLAINTIFF'S CLAIMS**

A Bivens action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695 (2006). "Actions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Stum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991.) Plaintiff alleges that individual prison employees at TCI violated his constitutional rights, which suggests a Bivens claim against federal officers. Iqbal, 556 U.S. at 675 (citing Bivens, 403 U.S. 388, 91 S.Ct. 1999 (1971)); Correctional Serv. Corp. v. Malesko, 534 U.S. 61, 66, 122 S.Ct. 515, 519 (2001); Pollard v. GEO Group, Inc., 629 F.3d 843, 854 (9th Cir. 2010). A Bivens claim is only available against officers in their individual capacities, Morgan v. U.S., 323 F.3d 776, 780 n.3 (9th Cir. 2003); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996), and

Plaintiff must allege facts linking each named defendant to the violation of his rights, Iqbal, 556 U.S. at 676; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The factual allegations must be sufficient to state a plausible claim for relief, and the mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678-79; Moss, 572 F.3d at 969.

### A.      Defendant Management & Training Corporation

Plaintiff names the Management & Training Corporation, a private corporation, as a defendant.  A Bivens claim is only available against officers in their individual capacities.  Morgan, 323 F.3d at 780 n.3; Vaccaro, 81 F.3d at 857.  Plaintiff may not recover damages against private corporations.  Malesko, 534 U.S. at 63 (declining to extend Bivens damages action to allow for recovery against private corporation).  Therefore, Plaintiff fails to state a claim against defendant Management & Training Corporation.

### B.      Defendant Warden Neil H. Adler

Plaintiff names Neil H. Adler, Warden of TCI, as a defendant.  However, Plaintiff fails to make any allegations against defendant Adler.  To the extent that Plaintiff seeks to hold defendant Adler liable in his supervisory capacity, Plaintiff fails to state a claim.  Liability may not be imposed on supervisory personnel under Bivens on the theory of *respondeat superior*. Bibeau v. Pacific Northwest Research Foundation, Inc., 188 F.3d 1105, 1114 (9th Cir. 1999) (*respondeat superior* and such liability does not lie in either Bivens or section 1983 actions); Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991).  Each Defendant is only liable for his or her own misconduct, and Plaintiff must demonstrate that each Defendant, through his or her own *individual actions*, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77 (emphasis added). The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). A supervisor may be held liable only if he or she "participated in or directed

the violations, or knew of the violations and failed to act to prevent them." Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Therefore, Plaintiff fails to state a claim against defendant Adler.

### C.     **Fifth Amendment Due Process**

"The Fifth Amendment Due Process Clause protects only against deprivation of existing interests in life, liberty, or property." Serra v. Lappin, 600 F.3d 1191, 1196 (9th Cir. 2010) (citing see Stanley v. Gonzales, 476 F.3d 653, 660 (9th Cir. 2007) ("to assert a procedural due process claim under the Fifth Amendment, [a plaintiff] must first establish a constitutionally protected interest. [The plaintiff] must have more than a unilateral expectation of it; instead, she must have a legitimate claim of entitlement.")  However, Supreme Court precedent makes it clear that "liberty" interests do not arise simply because the inmate is exposed to more adverse conditions of confinement. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005) (citing Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976).  Rather, a liberty interest protected by the due process clause arises only when the deprivation of privileges amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 233, 125 S.Ct. 2384.

Prisoners have no liberty interest in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323, 96 S.Ct. 1551(1976), or in not being transferred, Meachum, 427 U.S. at 224-25; see also Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983).  Moreover, the Third and Tenth Circuits have found that privileges revoked because of IFRP refusal status do not infringe upon a prisoner's protected liberty interest. See Duronio v. Gonzales, 293 Fed.Appx. 155, 157 (3d Cir. 2008) (unpublished) (privileges revoked because of IFRP refusal status do not give rise to liberty interest); Davis v. Wiley, 260 Fed.Appx. 66, 68-69 (10th Cir. 2008) (unpublished) (in habeas case brought under 28 U.S.C. § 2241, affirming constitutionality of IFRP and noting that "the benefits that can be denied [as a result of refusal status] are not constitutionally guaranteed" and that "mere inducements – such as the BOP's threat to alter Davis' place of confinement – without more, do not infringe on a prisoner's protected liberty interest"). Plaintiff alleges that Defendants restricted his commissary and vacation privileges and placed

7

him into lower housing. Because he has no liberty interest in not losing privileges, Plaintiff fails to state a due process claim for loss of these privilege.

Plaintiff does not have a liberty interest in his prison job, Sandin v. Conner, 515 U.S. 472, 484 (1995), nor does Plaintiff have a property interest in his prison job, see Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). With respect to Plaintiff's reduction in pay, the Constitution does not provide prisoners any substantive entitlement to compensation for their labor. Serra, 600 F.3d at 1196. Plaintiff alleges that Defendants fired him from his job and gave him a low pay grade job. Because Plaintiff has neither a liberty interest nor a property interest in his prison job or wages, Plaintiff was not entitled to any procedural due process protections in conjunction with these losses. Therefore, Plaintiff fails to state a due process claim for losing his job or wages.

With respect to placement in the SHU, the Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted). Therefore, Plaintiff fails to state a due process claim for being detained in the SHU.

### D.     Verbal Threats and Harrassment

Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Plaintiff alleges that Defendants made harassing remarks to him and threatened to place him in isolation or transfer him to another facility. Plaintiff fails to state a claim with these allegations.

### E. Discrimination – Equal Protection Claim

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that Defendant Stewart, who is African-American, discriminated against Plaintiff, who is Caucasian, when she disciplined him for making remarks to her, failed to treat him as pleasantly as she treated African-American inmates, and caused him to wait for his serving of food in the dining hall. However, Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

### F. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Rizzo, 778 F.2d at 532; see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir.1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995). The Supreme Court has not recognized a claim sounding in the First Amendment under Bivens; however, "the Court assum[ed] without deciding [in Iqbal] that

9

Iqbal's First Amendment claim [was] actionable in a <u>Bivens</u> action." <u>Iqbal</u>, 556 U.S. at 663, 675. Assuming that <u>Bivens</u> liability extends to First Amendment claims, Plaintiff states a cognizable claim for retaliation.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a [governmental] actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005)) (quotation marks omitted); <u>accord</u> <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff alleges that defendant McBride retaliated against him for exercising his right to file a complaint for discrimination at the prison, by threatening to transfer him to another facility and further detain him in the SHU if he did not drop the complaint. This is sufficient to state a cognizable claim for retaliation against defendant McBride. However, Plaintiff fails to state a claim for retaliation against any other Defendant.

### G. **Conspiracy**

Plaintiff alleges that all of the Defendants "acted in concert" to punish Plaintiff, which suggests a claim for conspiracy. (Third Amd Cmp at 15 ¶34.) Plaintiff also alleges that Counselor Cynthia Mann conspired against him when she "acted with indignation when she stated: "I'm glad to have him out of my hair." (<u>Id.</u> at 15 ¶33.) The Court presumes that Plaintiff seeks to bring a conspiracy claim under 42 U.S.C. § 1985(3).

Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. <u>Gillespie</u>, 629 F.2d at 64; <u>Giffin v. Breckenridge</u>, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a

///

racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that Defendants conspired together. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff does not allege facts to support the allegation that any of the Defendants entered into a conspiracy. Therefore, Plaintiff fails to state a claim for conspiracy for which relief can be granted under § 1985 against any of the Defendants.

### H. First Amendment Freedom of Speech

Plaintiff alleges that defendant Stewart violated Plaintiff's right to free speech when she took disciplinary action against him for remarks Plaintiff made to her while on his work assignment.

Allegations of actions against a prisoner's First Amendment rights to speech may support a § 1983 claim. Rizzo, 778 F.2d at 532; see also Valandingham, 866 F.2d 1135; Pratt, 65 F.3d at 807. As previously noted, however, the Supreme Court has not recognized a claim sounding in the First Amendment under Bivens. Iqbal, 556 U.S. at 675. Even if Bivens liability extends to First Amendment claims, Plaintiff has failed to state a cognizable cause of action.

[I]mprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. Turner v. Safley, 482 U.S. 78, 93, 107 S.Ct. 2254 (1987); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. See Turner, 482 U.S. at 84-85, 107 S.Ct. 2254. As Overton (summarizing pre-Turner case law) pointed out, "courts owe substantial deference to the professional judgment of prison administrators." Overton v. Bazzetta, 539 U.S.126, 132, 123 S.Ct. 2162 (2003). Turner reconciled these

principles by holding that restrictive prison regulations are permissible if they are "reasonably related to legitimate penological interests," and are not an "exaggerated response" to such objectives. Turner, 482 U.S. at 87, 107 S.Ct. 2254. Turner also sets forth four factors "relevant in determining the reasonableness of the regulation at issue": (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmate; (3) whether accommodation of the asserted constitutional right will have an impact on other inmates, guards, and prison resources; and (4) whether there are ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. Id. at 89-90, 107 S.Ct. at 2261-62. See Beard v. Banks, 126 S.Ct. 2572, 2577 (2006).

Plaintiff has not alleged facts showing that the discipline taken against him for making remarks to defendant Stewart was not "reasonably related to legitimate penological interests." Therefore, Plaintiff has not alleged facts sufficient to state a claim against defendant Stewart for violation Plaintiff's rights to free speech under the First Amendment.

**I.     State-Law Claim for False Imprisonment**

Plaintiff brings a claim for false imprisonment against defendants for detaining him in the SHU. Plaintiff is informed that violation of state tort law is not sufficient to state a claim for relief under § 1983. Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," with specific exceptions. "Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a 'common nucleus of operative fact between the state and federal claims.' " Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (quoting Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir.1991)). "[O]nce judicial power exists under § 1367(a),

retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).

In this instance, the Court has found that Plaintiff states a cognizable federal claim for retaliation. However, there is insufficient factual dependence between Plaintiff's retaliation claim and his state-law false imprisonment claim to justify the exercise of supplemental jurisdiction. Plaintiff's alleges in his retaliation claim that on August 5, 2009, he was threatened by defendant McBride with extended detention in the SHU and transfer to another facility if Plaintiff did not drop a complaint for discrimination against prison staff, and Plaintiff dropped the complaint to avoid the threatened repercussions. These allegations are independent from those asserted in his false imprisonment claim: that he was falsely imprisoned when he was detained in the SHU because of a disciplinary charge arising from an incident on July 30, 2009. The facts relevant to the retaliation claim are limited to allegations that defendant McBride made threats to discourage Plaintiff from exercising his First Amendment right to maintain an inmate complaint. The false imprisonment claim has little or no factual or logical interdependence, and, under these circumstances, the Court should not exercise supplemental jurisdiction over it.

## V. RECOMMENDATIONS AND CONCLUSION

In this action, the Court previously granted Plaintiff two opportunities to amend the complaint, with ample guidance by the Court. Plaintiff has now filed three complaints in this action. The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, based on the foregoing, the Court **HEREBY RECOMMENDS** that:

1. This action proceed only against defendant McBride on Plaintiff's claim for retaliation;
2. All other claims and defendants be dismissed from this action;
3. The Court decline to exercise supplemental jurisdiction over Plaintiff's state-law false imprisonment claim;

4. Plaintiff's claims for conspiracy, verbal threats and harrassment, and violations of due process, equal protection, and freedom of speech be dismissed from this action based on Plaintiff's failure to state a claim; and

5. Defendants Management & Training Corp., Neil H. Adler, Tiarra Stewart, Curtis Logan, Mann, and Does 1-50 be dismissed from this action for Plaintiff's failure to state any claims against them.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provision of Title 28 U.S.C. § 636 (b)(1)(B). Within thirty days after being served with these findings and recommendations, the parties may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **April 13, 2013**                          **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE